UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAMON SCOT HAAS,

Plaintiff,

v.

Case No. 25-cv-1631-bhl

FRANK BISIGNANO, Commissioner of the Social Security Administration,

Defendant.

---

## DECISION AND ORDER

---

Plaintiff Damon Haas seeks review of the final decision of the Commissioner of the Social Security Administration denying his claim for supplemental security income (SSI) under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On May 26, 2022, Haas applied for SSI alleging his disability began on March 27, 2017, when he was 21 years old. (ECF No. 9-1 at 25, 30, 159.) After his claims were denied initially and on reconsideration, he requested a hearing before an administrative law judge (ALJ). (*Id.* at 25.) At a November 18, 2024 hearing, the ALJ heard testimony from Haas and a vocational expert. (*Id.*) The ALJ then issued a December 5, 2024 decision following the five-step sequential evaluation of disability set forth in 20 C.F.R. §419.920(a) and finding that Haas's impairments were limiting but not fully disabling. (*Id.* at 25–38.) The ALJ further determined that Haas could perform a number of jobs that exist in significant numbers in the national economy and was therefore not disabled. (*Id.* at 37–38.) On August 20, 2025, the Appeals Council denied Haas's request for review of that decision. (*Id.* at 5–7.) Haas now seeks judicial review pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

Haas alleged disability due to epilepsy, brain damage from seizures, and memory problems. (ECF No. 9-1 at 30–31 (citing ECF No. 9-1 at 193).) Haas had an onset of seizures in 2009, when he was approximately 14 years old. (*Id.* at 31.) In an adult function report, Haas asserted that

lifting heavy objects presented a seizure risk, that his impairments affected his ability to talk, remember, complete tasks, concentrate, understand, follow instructions, handle stress and changes in routine, and that he needed a two-to-three-hour nap daily. (*Id.* at 31 (citing ECF No. 9-1 at 200–07).) Haas further reported that he had completed high school, attended one year of college and last worked from June to December 2015 as a cashier at Walmart. (*Id.* at 30 (citing ECF No. 9-1 at 194).) At the hearing before the ALJ, Haas reported that his activities of daily living included light chores such as taking out the trash, running errands, and helping carry groceries. (*Id.* at 34 citing (ECF No. 9-1 at 51).)

Haas's medical records confirm he was diagnosed with symptomatic generalized epilepsy with generalized convulsions and atypical absence seizures. (*Id.* at 31 (citing ECF No. 9-1 at 277–573).) In September 2023, while establishing primary care, Haas reported having "24 hours of a seizure" in 2017, causing residual issues. (*Id.* at 32 (citing ECF No. 9-1 at 617–18).) His examination, however, was "unremarkable." (*Id.* (citing ECF No. 9-1 at 621).) As to residual cognitive issues, at a fall 2023 neuropsychological evaluation, Haas's standardized testing results were overall stable or improved as compared to results in April 2019, with continued significant weakness in attention, processing speed, and some aspects of executive functioning with noted significant improvement in several measures including fund of knowledge, visual learning and memory. (*Id.* (citing ECF No. 9-1 at 632–33, 816–848).) Haas's mental status examination was "unremarkable." (*Id.* citing ECF No. 9-1 at 628).)

Haas's primary treatment provider for epilepsy was Lee Klemens, APNP. According to medical records from October 2022, Nurse Klemens had treated Haas approximately every 6 months since February 2017. (*Id.* at 35.) Nurse Klemens indicated that Haas has generalized seizures occurring once per year, lasting approximately two minutes with a postictal (recovery period) of up to 12 hours and noted precipitating factors of physical exertion, stress and sleep deprivation. (*Id.* (citing ECF No. 9-1 at 811–14).) Nurse Klemens opined that Hass needed to sleep or rest for about 24 hours following a seizure and was unable to do work or complex activities of daily living. (*Id.*) He also opined that Haas was incapable of performing even low stress work as he had cognitive and attention deficits and was unable to perform tasks requiring complex cognitive functioning. (*Id.*)

In September 2023, Marc Zylstra, M.D. performed a consultative examination in connection with Haas's SSI application. (*Id.* at 36.) Haas described nonconvulsive seizures that

impacted his cognitive functioning and reported "significant memory issues," concentration issues that made him "space out a lot," forgetting conversations and where he is and misplacing objects. (*Id.* at 575.) Dr. Zylstra observed that Haas was "pleasant and cooperative during the evaluation," however, "he appeared to be quite interpersonally anxious throughout the interview" and "was quite unsure of himself interpersonally." (*Id.* at 575–76.) Dr. Zylstra described Haas's affect as "somewhat restricted" as "[h]e appeared to be worried and fairly anxious throughout the evaluation." (*Id.* at 576.) Haas reported that he had a "tendency to sleep a great deal during the day because of his medications" and that he occasionally needed hygiene reminders. (*Id.* at 576–77.) Dr. Zylstra also indicated that Haas reported difficulty concentrating. (*Id.* at 578.) For example, Haas stated he had trouble following conversations, would lose focus while reading or watching television, and failed to complete tasks. (*Id.*) Haas's mother attended the evaluation and reported that his seizures worsened after he went to college and became progressively worse and explained that after one seizure that lasted 24 hours, his memory became "significantly worse." (*Id.*) She further reported that Haas could do light chores, like dusting, but "typically need[ed] to be directed to do those tasks because he [did] not remember them on his own." (*Id.* at 577.) She explained that if Haas was told to buy something, he needed "a list with pictures" or would "forget what he [was] told to buy." (*Id.*)

Dr. Zylstra evaluated Haas's performance on the Wechsler Memory Scale-2 and concluded that he showed "a significant relative weakness with his ability to recall information presented in a visual fashion" and "would likely have some difficulty performing tasks required in a competitive work environment because of psychological issues." (*Id.* at 580.) He stated that Haas "may have episodic issues with attention and concentration that impact his ability to learn new information" and could "also have difficulty reliably summoning energy and motivation for productive activity because of depressive symptoms at times." (*Id.*) Dr. Zylstra concluded that Haas had "marked limitations in his ability to remember and apply information that is presented in a visual fashion." (*Id.*) He further concluded that Haas would likely have moderate-to-marked limitations in his ability to concentrate, persist, and maintain pace and in his ability to adapt or manage himself appropriately. (*Id.*)

A number of state agency medical consultants reviewed Hass's medical records and made administrative medical findings. In a June 27, 2023 report, state agency physician Marie Turner, M.D. opined that Haas retained the physical capacity for light work with no climbing ladders,

ropes and scaffolds, occasional climbing of ramps and stairs and with no exposure to hazards such as machinery or heights. (ECF No. 9-1 at 66–67.) On September 23, 2023, state agency psychiatrist Stephen Kleinman, M.D. opined that Hass was moderately limited in his ability to understand, remember, or apply information and in his ability to maintain concentration, persistence, or pace. (*Id.* at 65.) Dr. Kleinman further opined that Haas had moderate restrictions in his ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 68.) At the reconsideration level, on March 1, 2024, state agency physician Seung Park, M.D. affirmed Dr. Turner's conclusions. (*Id.* at 75–78.) On March 4, 2024, state agency psychologist Carlos Jusino Berrios, Ph.D. affirmed Dr. Kleinman's findings. (*Id.* at 74, 77–78.)

The ALJ employed the five-step sequential evaluation of disability required in the regulations. At step one, the ALJ concluded that Haas had not engaged in substantial gainful activity since May 26, 2022, the application date. (*Id.* at 27.) At step two, the ALJ found that Haas had severe impairments of epilepsy and mild neurocognitive disorder. (*Id.*) At step three, the ALJ determined that none of those impairments or combination of impairments met or equaled any of the agency's impairment listings. (*Id.* at 28.) At step four, the ALJ found that Haas has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §416.967(b) except that Haas cannot climb ladders, ropes or scaffolds, can occasionally climb ramps and stairs, must avoid exposure to unprotected heights, hazards and moving machinery; can maintain attention, concentration, persistence and pace for simple jobs tasks with regularly scheduled breaks and can perform jobs having only occasional decision-making and changes in work setting. (*Id.* at 30.) At step five, the ALJ found that considering Haas's age, education, work experience and RFC, jobs exist in significant numbers in the national economy that Haas could perform, such as cafe attendant, housekeeping cleaner, and small parts assembler. (*Id.* at 37.) The ALJ therefore concluded that Diemel was not disabled. (*Id.* at 38.)

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [a reviewing court] to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review." *Id.* at 1054 (cleaned up) (citations omitted). In reviewing the record, the Court does not displace the ALJ's judgment by reweighing evidence, resolving evidentiary conflicts, or deciding questions of credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Judicial review is deferential and is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)). If substantial evidence supports the ALJ's disability determination, the decision must be affirmed, "even where reasonable minds might disagree about the outcome." *Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023).

## ANALYSIS

Haas argues that the ALJ committed three reversible errors in concluding that Haas was not disabled. First, Haas alleges that the ALJ's evaluation of the consultative examiner's opinion and the nurse practitioner's opinion did not comply with 20 C.F.R. §416.920c. (ECF No. 13 at 9–14.) Second, Haas argues that the ALJ's evaluation of Haas's fatigue did not comply with Social Security Ruling (SSR) 96-8p. (*Id.* at 15–16.) Third, Haas argues that the ALJ's evaluation of

Haas's activities of daily living did not comply with SSR 16-3p. (*Id.* at 16–17.) Because the record does not support any of these challenges, the Commissioner's decision will be affirmed.

## I. The ALJ's Evaluation of Haas's Treating Nurse Practitioner's Opinion and Consultative Examining Psychologist's Opinion Complied With 20 C.F.R. §416.920c.

Haas argues that the ALJ's evaluation of the opinions of Nurse Klemens and Dr. Zylstra failed to address the factors required by 28 C.F.R. §416.920c. (ECF No. 13 at 9–14.) Under that regulation, when evaluating and articulating the persuasiveness of a medical opinion, an ALJ should consider supportability, consistency, the medical provider's relationship with the claimant, any specializations, and any other factors that tend to support or contradict the opinion. 20 C.F.R. §416.920c(c)(1-5). Of these, supportability and consistency are the most important. *Id.* at (b)(2). The Seventh Circuit recently held that if an ALJ provides adequate reasons for his conclusions, he "need only minimally explain" his weighing of a medical opinion. *Padua v. Bisignano*, 145 F.4th 784, 791 (7th Cir. 2025). The ALJ's analysis comported with these standards.

The ALJ found that Nurse Klemens's opinion regarding deficits in cognition and attention were "reasonably consistent with his performance on standardized testing at neuropsychological evaluations," but that "the overall evidence," including Haas's mental status examinations, was "not consistent with an inability to work[.]" (ECF No. 9-1 at 36.) The ALJ noted that Nurse Klemens's October 2022 treatment notes indicated that while Hass reported depressed mood, memory deficits and difficulty maintaining concentration, his mental status examination was normal. (*Id.* at 35.) The treatment notes showed that Haas presented with a normal mood, affect, alertness, and orientation. (*Id.* at 35–36 (citing ECF No. 9-1 at 299–300).) Haas was able to answer questions, follow commands appropriately, had fluent speech with normal naming, repetition, and comprehension, intact memory, normal attention and concentration, normal fund of knowledge, and normal judgment. (*Id.*)

Haas contends that the fact that Nurse Klemens's opinion was consistent with neuropsychological testing performed by two separate doctors "should have bolstered the persuasiveness of his opinion." (ECF No. 13 at 9–10.) The ALJ, however, weighed the evidence that was both favorable and unfavorable to Haas's case and concluded that it did not portray an individual precluded from all work given Haas's mental status examinations and the September 2023 consultative psychological examination. (ECF No. 9-1 at 36.)

The ALJ found Dr. Zylstra's opinion "only somewhat persuasive." (*Id.* at 36.) Dr. Zylstra opined that Haas had (1) mild to moderate limitations interacting appropriately with others; (2) moderate to marked limitations concentrating, persisting, and maintaining pace; and (3) moderate to marked limitations adapting or managing himself appropriately. (*Id.* (citing ECF No. 9-1 at 580).) The ALJ found that Dr. Zylstra's assessment of more than mild limitations in Haas's ability to interact with others or more than moderate limitations in the remaining domains was not consistent with the overall evidence, including longitudinal mental status examinations at treatment visits through April 2024 documenting normal mood and affect, intact memory, normal attention and concentration, normal fund of knowledge and judgment, and intact naming, repetition, and comprehension. (*Id.* at 36 (citing ECF No. 9-1 at 289, 299–300, 317, 331, 628, 687).)

Haas complains about the ALJ's assessment of Dr. Zylstra's opinion but essentially asks this Court to reweigh the evidence and assign greater significance to certain of Dr. Zylstra's findings. This misunderstands the Court's role. The Court "do[es] not review medical opinions independently but rather review[s] the ALJ's weighing of those opinions for substantial evidence, and [it] only overturn[s] that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). And an ALJ is not required to discuss every piece of evidence. *Pepper*, 712 F.3d at 363 ("an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence" (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). The ALJ thoroughly discussed the medical records, which show that Haas benefitted from treatment and retained reasonable physical and mental function. (ECF No. 9-1 at 36.) The overall record provides a basis for the ALJ to reasonably conclude that Haas was not disabled and remained capable of light work with additional nonexertional restrictions. The ALJ has "said enough here to support [his] decision and permit meaningful . . . review," which is sufficient to meet "the most minimal of articulation requirements" to which the ALJ is subject. *Thorlton v. King*, 127 F.4th 1078, 1083 (7th Cir. 2025) (quoting *Warnell*, 97 F.4th at 1053).

## II. The ALJ Appropriately Evaluated Haas's Fatigue

Haas next challenges the ALJ's consideration of his complaints of fatigue as insufficient. (ECF No. 13 at 15.) The ALJ noted Haas's subjective reports of fatigue but found that treatment notes did not "substantiate significant, ongoing complaints or clinical observations as to

abnormalities in alertness or orientation." (ECF No. 9-1 at 34.) The treatment notes also did not support Haas's subjective reports of requiring daily naps of up to three hours. The ALJ "need only include limitations that are supported by the medical record." *Reynolds*, 25 F.4th at 473. The ALJ's RFC nevertheless accommodated Haas's fatigue with an RFC restricting Haas to light work with postural, environmental, and mental limitations, including maintaining attention, concentration, persistence and pace for simple job tasks with regularly scheduled breaks. (*Id.* at 30, 34.) The record confirms that the ALJ acknowledged Haas's fatigue complaints and fashioned an RFC that accommodated them.

Haas's complaint boils down to a disagreement with the ALJ's conclusions concerning his claims of fatigue and a desire that the ALJ should have credited or given greater weight to other evidence. But, as the Seventh Circuit has explained, the mere "presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). That the ALJ could have reached a different conclusion does not render the ALJ's ruling incorrect or require a remand. Rather, it is Haas's "burden to show that the ALJ's decision is not supported by substantial evidence." *Olsen v. Colvin*, 551 Fed. Appx. 868, 875 (7th Cir. 2014). Here, Haas has not shown that his subjective reports of fatigue compelled the ALJ to adopt additional RFC limitations. *Delong v. Saul*, 844 Fed. Appx. 894, 900 (7th Cir 2021) ("But even if the record could support such limitations, there is nothing that compels them.").

## III. The ALJ's Analysis of Haas's Activities of Daily Living Complied with SSR 16-3p.

Haas's final ground for remand is his contention that the ALJ's analysis of Haas's activities of daily living failed to comply with SSR 16-3p. (ECF No. 13 at 16.) The ALJ noted that Haas was able to manage his personal care, manage medications with reminders at times, prepare simple foods, assist with chores, run errands with his mother, go to the movies, read, write, listen to music and podcasts, and use a cellphone. (ECF No. 9-1 at 33–34.) The ALJ further noted that treatment notes also reflected a range of activity. (*Id.* at 34 (citing ECF No. 9-1 at 289).) The ALJ therefore found that Haas's activities demonstrated that he was "able to engage in a number of normal day-to-day activities" which required "some of the mental abilities and social interactions necessary for obtaining and maintaining employment." (*Id.* at 34.)

Haas argues that the ALJ failed to the consider the limitations Haas alleged in doing his activities. For example, he cites his mother's report that if Haas tried to shop, he needed "a list

with pictures" or he would "forget what he [was] told to buy." (ECF No. 13 at 17.) The record confirms, however, that the ALJ reasonably found that Haas's activities of daily living "suggest[ed] greater physical and mental capacity than alleged." (ECF No 9-1 at 33.)

When determining the existence or extent of a disability, SSR 16-3p requires ALJs to consider a claimant's "own description or statement of . . . his . . . physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). This is a two-step process. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278 (citations omitted). The Social Security Act provides that, "an individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. §423(d)(5)(A). "Objective medical evidence of pain or other symptoms. . . . must be considered in reaching a conclusion as to whether the individual is under a disability." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila*, 573 F.3d at 517 (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023). And a credibility finding is not "patently wrong" if the ALJ discredited the claimant's subjective testimony based on "many specific reasons supported by the evidence." *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018).

In assessing Haas's activities of daily living, the ALJ found that the record failed to substantiate Haas's allegation that he was incapable of performing light work. The ALJ reasonably found that given Haas's objectively good physical and mental status examinations he was not as limited as alleged and remained capable of performing light work with additional restrictions. (ECF No. 9-1 at 33.) Haas's contention that the ALJ's assessment of Haas's subjective complaints was lacking fails because the ALJ's decision shows that he reasonably weighed Haas's allegations against a thorough evaluation of the medical evidence and his activities. Haas has failed to show that the ALJ's evaluation of his daily activities lacked substantial evidentiary support or was "patently wrong." *See Simila*, 573 F.3d at 517.

As previously noted, an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053–54 (citations omitted). An ALJ's decision should be affirmed when the ALJ minimally articulates the bases for his conclusions. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). Because none of Haas's asserted grounds provides a basis for remand, the Commissioner's decision is affirmed, and the case is dismissed.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on October 15, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge